[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 341.]

OFFICE OF DISCIPLINARY COUNSEL *v.* PAGAC.

**[Cite as *Disciplinary Counsel v. Pagac*, 1995-Ohio-312.]**

*Attorneys at law—Misconduct—Permanent disbarment—Conduct involving fraud, deceit, dishonesty, or misrepresentation—Conduct prejudicial to the administration of justice—Conduct adversely reflecting on fitness to practice law—Withdrawal of unearned or disputed fees from client funds— Failure to promptly pay or deliver funds client is entitled to receive— Inadequate preparation—Taking action on behalf of client that obviously serves only to harass or maliciously injure another—Undignified, discourteous, or degrading conduct before a tribunal—Neglect of an entrusted legal matter—Asking irrelevant question to witness—Disregard of tribunal's order or ruling.*

(No. 94-2701—Submitted March 7, 1995—Decided June 28, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 89-54.

───────────────

**{¶ 1}** In an amended complaint filed March 2, 1993, relator, Office of Disciplinary Counsel, charged respondent, Paul Luka Pagac III of Youngstown, Ohio, Attorney Registration No. 0015049, with twenty-three counts of professional misconduct. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court heard the matter on July 7, 1994. Respondent answered the amended complaint, and he subsequently requested subpoenas, filed motions, and attended a preliminary motion hearing; however, he did not attend the hearing before the panel.

**{¶ 2}** The panel found no clear and convincing evidence to support Counts I through III, XII and XIII, XV, and XVIII through XX, and it recommended

dismissal of these charges. Evidence submitted to prove the remaining counts, however, established that respondent repeatedly violated the Code of Professional Responsibility.

{¶ 3} With respect to Count IV, the panel determined that respondent had violated 1-102(A)(4) (conduct involving fraud, deceit, dishonesty, or misrepresentation), 1-102(A)(5) (conduct prejudicial to the administration of justice), and 1-102(A)(6) (conduct adversely reflecting on fitness to practice law) because he wrote a check for $1,500 to himself, purportedly for legal fees, from an account he established with funds belonging to the estate of Richard E. McCormick. Respondent was not the attorney of record for the estate, he had not requested probate court approval for these fees, and the executor, Darlien A. Sievert, had not consented to this payment.

{¶ 4} Respondent made threats to Sievert and his own co-workers that also contributed to the panel's findings of misconduct. Respondent told Sievert that if she pursued a grievance against him, "he would see [her] floating down the river." When his secretary left his employ, respondent told her that if she didn't "keep [her] mouth shut," she, her husband, or her daughter might be killed. The secretary believed the threat, in part because she had seen the gun that respondent wore to the office strapped to his ankle. An attorney with whom respondent formerly shared office space confirmed that respondent carried a gun. He testified that respondent had once threatened him with a loaded firearm and that the gun had discharged, narrowly missing his head.

{¶ 5} The panel determined that respondent violated DR 9-102(A)(2) (withdrawal of unearned or disputed fees from client trust account) and (B)(4) (failure to promptly pay or deliver funds client is entitled to receive), as charged in Count V, because he had paid himself fees even though Sievert disputed that he had performed any service for the McCormick estate. The panel also found that he violated DR 6-101(A)(2) (inadequate preparation) and 1-102(A)(5), as charged in

Count VI, because he was not familiar with probate practice and yet attempted to provide representation in that area of the law.

{¶ 6} Counts VII through X alleged that respondent had not disclosed requested information on an insurance and securities sales agent contract he completed in 1989. The panel determined that respondent violated DR 1-102(A)(4) and (6) with respect to each count because (1) he had not disclosed that he had already been an agent for another insurance company, as charged in Count VII, (2) he falsely represented that he had never been a party to a bankruptcy proceeding, as charged in Count VIII, (3) he had not disclosed the 1988 suspension of his license to practice law, as charged in Count IX, and (4) he denied that he had been under investigation again in 1989 for attorney misconduct, as charged in Count X.

{¶ 7} With respect to Count XI, the panel determined that respondent committed two more violations of DR 1-102(A)(4) and (6) because, in applying for his Ohio agent/solicitor license in 1989, he again failed to reveal his prior employment as an insurance agent.

{¶ 8} Respondent was discharged for falsifying his agent/solicitor application by Michael Fonda, a manager for the company to which he had applied. Respondent retaliated by filing two lawsuits against Fonda, one on behalf of Fonda's ex-wife. Count XIV charged and the evidence established that respondent maligned Fonda in a March 27, 1990 letter to an Austintown township trustee for whom Fonda had once worked as an auxiliary policeman. The letter lodged several unsubstantiated accusations of unethical and illegal conduct, and it urged rejection of Fonda's application to rejoin the police department. The panel determined that respondent's conduct violated DR 1-102(A)(4) and (6), as well as DR 7-102(A)(1) (taking action on behalf of client that obviously serves only to harass or maliciously injure another).[1]

---

1. The panel also found violations of DR 1-102(A)(5), 7-102(A)(2) (advancing claim known to be unwarranted), and 7-106(C)(1) (stating matter with no reasonable basis to assert relevance or

**{¶ 9}** Counts XVI, XVII, and XXI charged respondent with misconduct in appearing before two Youngstown Municipal Court judges. With respect to Count XVI, the panel found that respondent violated DR 1-102(A)(5) and (6), and 7-106(C)(1) and (6) (undignified, discourteous, or degrading conduct before a tribunal) because he knelt to beg for mercy on behalf of a client before Judge Andrew Polovischak, Jr., he asked the client's relatives to rise, and he promised they would all vote for Judge Polovischak if he granted the client probation. The panel found a violation of DR 7-106(C)(6), as charged in Count XVII, because respondent also begged on his knees for mercy in representing a client before Judge Louis K. Levy. With respect to Count XXI, the panel found respondent in violation of DR 1-102(A)(5) and (6), 6-101(A)(3) (neglect of an entrusted legal matter), 7-102(A)(1), 7-106(A), and 7-106(C)(1), (2) (asking irrelevant question to witness or person), and (6) because he refused to speak on behalf of another client until Judge Levy stated whether he took bribes from organized crime.

**{¶ 10}** Counts XXII and XXIII urged enhancement of the sanction for respondent's misconduct, as authorized by Gov.Bar R. V(6)(C), and Count XXII further charged that respondent had violated DR 7-106(A) (disregard of tribunal's order or ruling), and 1-102(A)(5) and (6). Respondent had been suspended from the practice of law for six months in 1988 for violations of DR 1-102(A)(6) and 2-106(A) (charging excessive fees). See *Mahoning Cty. Bar Assn. v. Pagac* (1988), 39 Ohio St.3d 1, 528 N.E.2d 948. He was suspended again in February 1992 for his contumacious refusal to respond to a letter of inquiry and subpoena issued during relator's investigation. 63 Ohio St.3d 1412, 585 N.E.2d 837. He was reinstated in March 1992. 63 Ohio St.3d 1424, 587 N.E.2d 842. The panel therefore found clear and convincing evidence for all the misconduct alleged in the last two counts of the amended complaint.

---

admissibility); however, these violations were not specifically charged in Count XIV of the amended complaint.

**{¶ 11}** The panel recommended that respondent be permanently disbarred. In its report adopting the panel's findings of fact, conclusions of law, and recommendation, the board stated that it was extremely disturbed by respondent's repeated threats of violence against his clients and co-workers, and noted that client intimidation had also played a part in the misconduct for which he had been disciplined in 1988.

———————————

*Geoffrey Stern*, Disciplinary Counsel, and *Harald F. Craig III*, Assistant Disciplinary Counsel, for relator.

———————————

**Per Curiam.**

**{¶ 12}** Respondent moved to strike the board's recommendation as being the product of an "illegal discriminatory investigation and prosecution" instituted while he was "court adjudicated mentally incompetent and incapacitated." Respondent has not substantiated these allegations, and the record before us provides no medical evidence from which this conclusion can be drawn. Rather, we see only the report of a psychiatrist, to whom respondent was referred by relator in 1992, that describes respondent's prior drug and alcohol addictions as being "in remission" and concludes that "[h]e does not have any other mental illness, such as a depressive disorder or affective disorder, anxiety disorder, or psychosis." The motion to strike is, therefore, overruled.

**{¶ 13}** Respondent's violations of the cited Disciplinary Rules, on the other hand, are amply supported by the evidence, and we share the board's anxiety over his attempts at intimidation. We, thus, completely agree with the recommendation to impose our harshest penalty for this misconduct. Respondent is hereby ordered permanently disbarred from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

WRIGHT, J., not participating.

_____